THE JESSUP AND MOORE PAPER COMPANY,

*vs.*

THE A. S. REED AND BROTHER COMPANY.

*New Castle, April 8, 1913.*

A court of chancery is the only proper tribunal to determine whether an arbitrators' award should be set aside for misconduct of an arbitrator, since the reason for setting it aside is not available as a defense in an action at law on the award; but it would have no jurisdiction to set aside an award made on a reference in a cause pending in a court of law, as that court is possessed of the cause and able to grant full relief.

Where an arbitrator, after all the evidence had been submitted, privately and without the knowledge of the parties secured an opinion from some one on a material question in the case, and communicated such opinion to the other arbitrators, he was guilty of official misconduct, though he acted without improper motive.

Where evidence is received by arbitrators other than at the hearing, the court should not consider whether such evidence influenced the award; but, unless it is apparent that such evidence was wholly immaterial, the award should be set aside.

BILL TO SET ASIDE AN AWARD because of partiality and misconduct of a referee. The bill was filed to set aside an award because of the partiality and misconduct of one of the referees. It appears that the defendant had contracted to erect a building for the complainant within a certain time and failed to do so, and the complainant refused to pay the amount due for the work done, claiming that the delay in completing the building was the fault of the defendant and that the complainant had suffered damages for the delay to an amount in excess of the balance admitted to be due the defendant, as claimed by the defendant. By the terms of the contract, in case of dispute the matter must be referred to three arbitrators, one chosen by each party and the two referees to choose the third. This was done and a hearing had, at which witnesses were heard, counsel for the parties being present. The responsibility for the delay was disputed. The building was intended for the manufacture of wet bleach, and to prove damages for the defendant's delay the complainant produced before the referees a witness who testified as to the superior efficiency of wet bleach over dry bleach, and from the books of the complainant he calculated the money loss to the complainant from an enforced continuance of the use of dry bleach, instead of wet bleach, during the period of the delay in completing the building, which was intended for the manufacture of wet bleach. No evidence was submitted by the contractor as to this element of damage. After the hearing was concluded the arbitrators separated to re-convene at a fixed date to reach a conclusion and make an award. During the interval one of the referees, without the consent or knowledge of the parties,

obtained an opinion from some person, whose identity was not disclosed, as to the relative efficiency of wet and dry bleach. This information was communicated to the other referees and an award in favor of the builder was made by two referees for the full amount claimed and admitted to be due for the work done by the contractor. Afterwards a suit was brought on the award in the Superior Court, and the owner, having discovered the facts alleged to constitute partiality and misconduct, brought a bill to set aside the award.

The hearing was had upon a rule for a preliminary injunction, upon *ex parte* affidavits.

*Saulsbury & Morris* for the complainant.

*William S. Hilles* and *Edmund S. Hellings*, for the defendant.

THE CHANCELLOR.   The facts as above stated are not disputed.   Two of the arbitrators, those who agreed on the award, state that there was ample evidence to show that the defendant was not responsible for the delay in completing the building, and that the testimony showed them that the complainant was·not entitled to any damages.   Two points were before the referees: (1) which party was responsible for the delay, and (2) if the defendant, then what, if any, damages did the complainant sustain?   It is clear that to have made an award for the contractor the two referees must have found, either that the defendant was not so responsible for the delay, or that even if the contractor was responsible still the complainant had not sustained any damages.

It is clear that the Court of Chancery has jurisdiction, and is the proper and only tribunal, to hear and determine whether the award should be set aside, inasmuch as the reasons urged therefor by the bill are not available as a defense to an action at law on the award.   *Russel on Arbitrators*, 509.   Where there is a reference in a cause pending in a court of law, the Court of Chancery has no jurisdiction to set aside an award made in such reference, the law court being able to grant full relief.   *Beeson's Adm'rs. v. Elliott, Ex'r.*, 1 *Del. Ch.* 368; *Waples*,

*Adm'x. v. Waples*, 1 *Har.* 392, *note "a,"* a decision of the High Court of Errors and Appeals. See also, *Pepper v. Pepper*, 5 *Pennewill* 450, 62 *Atl.* 232.

Was it improper for the arbitrator to have received the testimony after the hearing? For the defendant it is claimed that an arbitrator had a right, and even that it was his duty, to seek information and advice oustide the testimony produced before him, provided he should exercise his own independent judgment in reaching a conclusion. There are many cases which so hold with respect to appraisers and valuers. *Emory v. Wase*, 5 *Veas. Jr.* 846; *Anderson v. Wallace*, 3 *Cl. & Fin.* 26; *Bangor Savings Bank v. Insurance Co.*, 85 *Me.* 68, 26 *Atl.* 991, 20 *L. R. A.* 650, 35 *Am. St. Rep.* 341, and others.

In some cases, and under some circumstances, the referees may take opinions on questions of law, and perhaps on scientific subjects. But after referees have heard testimony upon a point material to the issue before them, and after the hearing was concluded, one of the referees cannot, without the knowledge or consent of the parties, seek or receive other testimony on the same point from a witness, and by communicating it to his fellow referees bring it to bear on their judgment, with no opportunity to the parties, or the referees, to cross-examine the witness, or judge of his ability as a witness, or even to rebut his testimony. No such case has been found in the reports and would not be followed if there were. The distinction between those who simply make valuations and those who hear and decide disputes, is pointed out in *Bangor Savings Bank v. Insurance Co.*, *supra*, though this difference is denied in *Harvey v. Shelton*, 7 *Beav.* 455. After considering whether an arbitrator may privately seek an opinion, it is wisely said in *Russell on Arbitrators*, *203:

> "Unless, therefore, a submission be so worded as expressly to permit the arbitrators to obtain the assistance of valuers or scientific persons privately, and as he may require, it seemed the prudent, and probably only safe course, to examine them as witnesses in the presence of the parties."

It was irregular, therefor, for the referee in this case to have received testimony as to the relative efficiency of wet and

dry bleach.   This subject matter was one on which testimony was produced before the three arbitrators at the hearing and was clearly material to the issue, in case the arbitrators found the builder responsible for the delays in completing the building.   When he sought the information the referee could not have known that it was evidence on an immaterial point, for there had not then been any conference of the referees as to the character of the award.   It is quite unimportant that the referee acted in entire good faith, without thought of impropriety and without any unworthy motive.   His act of obtaining the testimony after the hearing, though honestly done, is yet technically official misconduct.   As was said by the court in *Moshier v. Shear*, 102 *Ill.* 169; 40 *Am. Rep.* 573:

"After being selected, it is the duty of an arbitrator, like a juror, to act fairly and impartially between the parties and on the evidence adduced before them on the trial, and entirely independent of all outside influences, and what will be misconduct on the part of a juror will, as a general rule, be such on the part of an arbitrator.   Neither has a right to learn facts except as brought to his attention on the trial.   It is gross misconduct for either to seek evidence or the opinions of others in regard to the case, or anything material to its decision in another mode."

A referee or arbitrator acting in a judicial capacity to hear and determine a dispute is both judge and jury, and cannot without the knowledge or consent of the parties receive testimony after having concluded a hearing of the parties.   Lord Eldon in *Walker v. Frobisher*, 6 *Ves. Jr.* 70 (the leading case in England), and in *Featherstone v. Cooper*, 9 *Ves. Jr.* 68; Lord Denman in *Dobson v. Groves*, 6 *Q. B.* 637; *Plews v. Middleton*, 6 *Q. B.* 845; *Mosely v. Simpson*, (1873) *L. R.* 16 *Eq.* 226, 235; *Moshier v. Shear*, 102 *Ill.* 169, 40 *Am. Rep.* 573; *Knowlton v. Mickles*, 29 *Barb.* (*N. Y.*) 465; *The David Harley Co. v. Barnefield*, 22 *R. I.* 267, 47 *Atl.* 544.

In *Walker v. Frobisher, supra*, one of the arbitrators received evidence after notice to the parties that he would receive no more.   Lord Eldon set aside the award, although the arbitrator swore that the new evidence had no effect upon his award.   In *Dobson v. Groves*, 6 *Q. B.* 637, an arbitrator after

hearing the parties sent for a witness and heard his testimony in the absence of the parties.   Lord Denman set aside the award although the arbitrator declared that nothing which he received from the witness influenced his decision.   The court said:

"When once the case is brought within the general principle, by a possibility that the arbitrator's mind may have been biased, there is a sufficient objection."

In *Plews v. Middleton*, 6 *Q. B.* 845, the arbitrators agreed among themselves that after having heard the parties they would separately, and in the absence of the parties, question a witness as to certain matters, and after comparing the result of their inquiries they agreed on the award.   This was held to be an irregular proceeding and the award was set aside, Colridge, J., saying:

"The arbitrators here carried on examinations apart from each other, and from the parties to the reference; whereas it ought to have been conducted by the arbitrators and umpire jointly, in the presence of the parties."

In *Moshier v. Shear*, 102 *Ill.* 169, 40 *Am. Rep.* 573, there was a re-submission of the question to a new reference and one of the arbitrators in the second reference talked over the subject-matter of the first reference with one of the arbitrators in the first reference.   The court said:

" * * * What will be misconduct on the part of a juror will, as a general rule, be such on the part of an arbitrator.   Neither has a right to learn facts except as brought to his attention on the trial.   It is gross misconduct for either to seek evidence or the opinions of others,  *  *  * or anything material to its decision in another mode."

In the case of *Knowlton v. Mickles*, 29 *Barb.* (*N. Y.*) 465, 471, an arbitrator called a witness who testified in the presence of one party and in the absence of the other.   The award was set aside upon the authority of *Walker v. Frobisher*.   The court said:

"It has been said by many of the judges that it is impossible for courts, or even the arbitrators themselves, to say what influence such statements made may have had upon them."

And in *The David Harley Co. v. Bransfield*, 22 R. I. 267, 47 *Atl.* 544, a referee was chosen by reason of his special experience and fitness to fix the compensation of a trustee, and obtained an opinion of a lawyer upon the subject and expressly based his award upon the opinion expressed by the lawyer, as to the amount to which the trustee was entitled, without expressing any opinion of his own. This was set aside.

In all of the above cases there was no responsibility of either party to the award for the irregularities of the arbitrators. In other cases cited the awards were set aside where evidence was received other than at the hearing, one of the parties thereto being responsible therefor. *Fetherstone v. Cooper*, 9 *Ves. Jr.* 68; *In re Hick*, 8 *Taunt.* 694; *Cleland v. Hedly*, 5 *R. I.*, 163, 166; *Strong v. Strong*, 9 *Cush.* (*Mass.*) 560, 574; *Hewitt v. Reed City*, 124 *Mich.* 6, 82 *N. W.* 616, 50 *L. R. A.* 128, 83 *Am. St. Rep.* 309; *Jenkins v. Liston*, 54 *Va.* 535.

It has been held, and is true in general, that in such cases the court should not consider whether the testimony so irregularly received influenced the decision.

"A judge must not take upon himself to say whether evidence improperly admitted had or had not an effect upon his mind." *Walker v. Frobisher*, 6 *Ves. Jr.* 70.

This statement of Lord Eldon has been adopted frequently. And Lord Denman opposed "all attempts to explain the hearing of particular parcels of evidence whether the inquiry had, or by any probability might have had, an effect upon the arbitrator's mind." So, also, it is said that it will not avail to sustain an award, that the referee declared that he was not influenced by the testimony irregularly received. *Walker v. Frobisher, supra; Cleland v. Hedly*, 5 *R. I.* 163; *Hewitt v. Reed City*, 124 *Mich.* 6, 82 *N. W.* 616, 50 *L. R. A.* 128, 83 *Am. St. Rep.* 309.

It is urged, however, for the defendant, that it appears that the outside evidence was a mere matter of opinion on a hypothetical case and was obtained simply to confirm knowledge on the subject of bleach possessed by the referee before he became such. It is to be noted, however, that this very matter

was the subject of testimony before the referees. In such cases, it would have been at least a wiser course for the referee to have done as the court suggested in the Massachusetts case of *Patterson v. Boston*, 20 *Pick.* (*Mass.*) 159, cited with approval in *Head v. Hargrave*, 105 *U. S.* 45, 50, viz: If he had any knowledge on a material fact the referee should have disclosed it, and perhaps have been sworn, and communicated his evidence to his fellows in the presence of the parties. But as the matter now stands upon the *ex parte* affidavits, it is not clear that the testimony irregularly received did not affect the award, or influence the result, though the evidence irregularly received bore only on the question as to damages and not directly to the question of liability for the delay in completing the building. The referees might have reached the conclusion on which the award was based by taking into consideration the testimony referred to. If so, then the complainant should have the necessary protection of a preliminary injunction pending the production of the testimony in the case. As to this particular point no opinion is now expressed. As the case now stands, it has not been clearly shown that the evidence was so wholly immaterial, or so trivial or unimportant, as to have been uninfluential in affecting the minds of the arbitrators.

There was no allegation or evidence that either of the parties participated in, or were responsible for, the act of the arbitrator in obtaining testimony other than that produced at the hearing, and it was contended for the contractor that the award should not be vitiated unless such participation or responsibility be shown. Such is probably the law of Pennsylvania. *Hostetter v. Pittsburgh*, 107 *Pa. St.* 419, 435; *Hartupee v. Pittsburg*, 131 *Pa. St.* 535, 19 *Atl.* 507; *Duvall v. Sulzner*, 155 *Fed.* 910, 918. The first case was based on *Braddick v. Thompson*, 8 *East* 344. But this latter case does not state the law in England. In *Atkinson v. Abraham*, 1 *B. & P.* 175, and in *Bignall v. Gale*, 2 *Man. & G.* 830, the Court of Common Pleas gave weight to the participation of a party in the misconduct of an arbitrator. But in two later cases in the Court of Queen's Bench, where these cases were cited, they were held not to be

satisfactory to Lord Denman and other judges, who adhered to Lord Eldon's position. *Dobson v. Groves*, 6 *Q. B.* 637, 647, and *Plews v. Middleton*, 6 *Q. B.* 845, 850. In neither of these two latter cases was a party to the reference responsible for the irregularity of the arbitrator. Complicity of a party in the misconduct of an arbitrator should not be necessary in order to set aside an award. There are several cases cited herein where there was such responsibility, though the courts did not base their decisions on that ground, but on the general one that evidence was received after the hearing was concluded.

It has seemed desirable to express, even at this preliminary state of the case, an opinion as to the law applicable to the undisputed facts already presented. It is not necessary to express any opinion at this time on the question raised as to the partiality or bias of the referee, complained of in the bill.

A preliminary injunction will be awarded.

NOTE. Subsequently a final decree was entered in accordance with this opinion by consent.