CIPRIANO v CIPRIANO

Docket Nos. 291377 and 292806. Submitted July 13, 2010, at Detroit. Decided August 10, 2010, at 9:05 a.m.

Plaintiff, Mary Cipriano, and defendant, Salvatore Cipriano, were granted a divorce in November 1993 in the Macomb Circuit Court, George C. Steeh, J. Plaintiff was awarded 55 percent of the marital property and $66,000 a year in periodic alimony to be paid in monthly installments of $5,500. Following further proceedings in the trial court and the Court of Appeals, the Court of Appeals, FITZGERALD, P.J., and SAAD and COOPER, JJ., determined that plaintiff was also entitled to 55 percent, plus interest, of the increase in the value during the marriage of defendant's interest in Peter Cipriano Enterprises (PCE). Unpublished opinion per curiam, issued July 25, 2006 (Docket No. 259818). In 2006, the trial court, Antonio P. Viviano, J., issued an amended supplemental judgment, ordering defendant to pay plaintiff $485,155 for her interest in PCE and the amount of interest that had accumulated on the asset from June 1993 to September 30, 2006, which was $456,132. In May 2007, defendant moved to amend the spousal support or the property award or to allow him to make installment payments. The parties then agreed to submit to binding arbitration. Following the parties' receipt of an excerpt of the arbitrator's proposed findings and awards, defendant sent a financial report to the arbitrator and phoned him. In September 2008, the arbitrator's final award ordered defendant to pay plaintiff $485,155 in installments, without interest on the award, and terminated defendant's spousal-support obligation effective May 2007. The arbitrator granted credit for defendant's alimony payments from May 2007 through September 2008 and determined that defendant would continue to pay $5,500 a month until he paid an additional $391,655 to satisfy the $485,155 award. Plaintiff moved to vacate, modify, or correct the arbitration award, arguing that the arbitrator had failed to follow the law-of-the-case doctrine, impermissibly modified the spousal support retroactively, and altered the award after the ex parte communications from defendant. On December 4, 2008, the trial court entered an order that denied plaintiff's motion and affirmed the arbitrator's award. The Court of Appeals granted plaintiff's delayed application for leave to appeal that

order in Docket No. 291377. In June 2009, the trial court held a hearing on defendant's May 2007 motion to amend the spousal support or property award or to allow him to make installment payments and entered an order reducing defendant's monthly payments to $3,870, but not altering the total amount awarded. Plaintiff appealed that order by leave granted in Docket No. 292806. The appeals were consolidated.

The Court of Appeals *held*:

1. The domestic relations arbitration act, MCL 600.5070 *et seq.*, contemplates that the parties will determine how they will produce the information necessary to resolve their dispute and does not impose procedural formalities that restrict this freedom. The parties' arbitration agreement in this case did not mention the topic of ex parte communication with the arbitrator. The only mention of the arbitration procedure was that the format for the arbitration would be determined by the arbitrator, with the object of expediting the hearing. Plaintiff did not show that the arbitrator exceeded his powers by receiving defendant's ex parte contacts. According to the arbitration agreement, the arbitrator retained the discretion to receive information from defendant in order to expedite the proceedings. Plaintiff did not show that any misconduct of the arbitrator prejudiced her rights or that the arbitration award was procured by undue means. The arbitrator's adjustment of his proposed award from a lump sum to installment payments and reduction of monthly spousal support to zero rather than the $250 proposed in the excerpt did not result in a substantial difference in the arbitration award by reason of a substantial error of law. Both the preliminary award excerpt sent to the parties and the final award greatly reduced the amount of spousal support, and the final award did not change the total amount of the property award. The trial court did not err by confirming the arbitrator's award despite defendant's ex parte contacts.

2. MCL 552.603(2) allows the retroactive modification of support orders from the date that notice of a petition for modification of support was given to the payer or recipient of support. The retroactivity of a modification is a matter within the court's discretion, but the modification may not take effect before the time the petition to modify was filed. Because defendant moved to modify spousal support or the property award or to allow him to make installment payments in May 2007, the arbitrator's award eliminating spousal support retroactively to May 2007 and converting the $5,500 payments to installment payments to satisfy the property award did not violate MCL 552.603(2).

3. The law-of-the-case doctrine does not apply to arbitration proceedings. The parties agreed that the arbitrator would decide the effect of the Court of Appeals' prior decisions on the equities of this matter regarding spousal support ordered and previously paid during the pendency of the appeals process. The arbitrator's award terminating spousal support at the time of plaintiff's receipt of an additional property award was within the parameters of the parties' agreement. The arbitration award must be upheld because plaintiff did not demonstrate that the arbitrator exceeded the powers that the parties' agreement granted to him. There was no error of law evident on the face of the award that was so substantial that, but for the error, the award would have been substantially different.

4. MCR 3.602 governs the procedure for modifying arbitration awards. MCR 3.602(K)(1) required that a complaint to modify the arbitration award be filed within 21 days after the date of the arbitration award because there was no pending action between these parties. Defendant moved to reduce the monthly payments awarded by arbitration several months after the award. MCR 3.602(K)(2) provides the grounds for modification of an arbitration award. Neither defendant nor the trial court referred to any of the provisions of MCR 3.602(K)(2) to justify the modification of the award. Even though the trial court did not change the total amount of the property award, the matter had been submitted to binding arbitration and the arbitrator specifically awarded plaintiff $5,500 in monthly payments. The trial court erred by modifying the arbitrator's award without a timely complaint and without reference to MCR 3.602(K)(2). The order of the trial court must be reversed, and the case must be remanded to the trial court to reinstate the $5,500 monthly payments awarded in arbitration.

Affirmed in part, reversed in part, and remanded.

1. ARBITRATION — DOMESTIC RELATIONS ARBITRATION ACT — ARBITRATION AWARDS — VACATION OF ARBITRATION AWARDS.

A court must vacate an arbitration award when a party applies under MCL 600.5081(2) if the award was procured by corruption, fraud, or other undue means; if there was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights; if the arbitrator exceeded his or her powers; or if the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights; in order for a court to

vacate an arbitration award because of an error of law, the error must have been so substantial that, but for the error, the award would have been substantially different.

2. DIVORCE — SPOUSAL SUPPORT — RETROACTIVE MODIFICATION OF SPOUSAL SUPPORT.

Retroactive modification of a spousal-support order is a matter within the discretion of the trial court; retroactive modification is permissible from the date that notice of the petition for modification was given to the payer or recipient of support; the modification may not take effect before the time the petition to modify was filed (MCL 552.603[2]).

3. ARBITRATION — LAW-OF-THE-CASE DOCTRINE.

The law-of-the-case doctrine does not apply to arbitration proceedings.

4. ARBITRATION — MODIFICATION OF ARBITRATION AWARDS — COMPLAINTS TO MODIFY ARBITRATION AWARDS.

A party seeking modification of an arbitration award must file a complaint to modify the award within 21 days after the date of the award if there is no pending action between the parties (MCR 3.602[K][1]).

5. ARBITRATION — MODIFICATION OF ARBITRATION AWARDS.

A court must modify or correct an arbitration award, on motion made within 91 days after the date of the award, if (a) there is an evident miscalculation of figures or an evident mistake in the description of a person, a thing, or property referred to in the award, (b) the arbitrator awarded on a matter not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision on the issues submitted, or (c) the award is imperfect in a matter of form, not affecting the merits of the controversy (MCR 3.602[K][2]).

*Allan W. Ben, P.C.* (by *Allan W. Ben* and *Joshua L. Ben*), for Mary Cipriano.

*Musilli Brennan Associates, PLLC* (by *John F. Brennan*), for Salvatore Cipriano.

Before: SAWYER, P.J., and BANDSTRA and WHITBECK, JJ.

PER CURIAM. In this divorce case, plaintiff, Mary Cipriano, appeals two orders of the Macomb Circuit Court addressing an arbitrator's award of property and spousal support. In Docket No. 291377, Mary Cipriano appeals by delayed application for leave to appeal granted a December 4, 2008, order of the circuit court denying her motion to vacate, modify, or correct the arbitration award and confirming the arbitrator's award. In Docket No. 292806, Mary Cipriano appeals by leave granted a June 15, 2009, order of the circuit court reducing the amount of the monthly payment that the arbitrator ordered defendant, Salvatore Cipriano, to pay Mary Cipriano from $5,500 to $3,870, while not changing the total amount awarded by the arbitrator. Because the procedures used during arbitration and the final arbitration award did not violate the parties' arbitration agreement, we affirm the circuit court's order confirming the arbitrator's award. But because Salvatore Cipriano and the circuit court did not provide any grounds under MCR 3.602(K)(2) to modify the arbitration award, we reverse the circuit court's order reducing Salvatore Cipriano's installment payments and remand for the court to reinstate the $5,500 monthly payments.

## I. BASIC FACTS

In November 1993, the trial court issued an order for divorce, awarding 55 percent of the marital property to Mary Cipriano and $66,000 a year to her in periodic alimony that was to be paid in $5,500 monthly installments. After several appeals in this Court and years of further proceedings below, this Court determined that Mary Cipriano was also entitled to 55 percent, plus interest, of the increase in the value of Salvatore Cipriano's interest in Peter Cipriano Enterprises (PCE)

during the marriage.[1] In 2006, the trial court issued an amended supplemental judgment, ordering Salvatore Cipriano to pay Mary Cipriano $485,155 for her interest in PCE and the amount of interest that had accumulated on the asset from June 1993 to September 30, 2006, which was $456,132. In May 2007, Salvatore Cipriano moved to amend the spousal support or the property award or to allow him to make installment payments. The trial court referred the matter to the friend of the court for an evidentiary hearing to determine whether the additional property award to Mary Cipriano would necessitate an adjustment in the alimony "all the way back to the beginning."

Rather than hold a hearing with the friend of the court, the parties agreed to submit to binding arbitration. In September 2008, the arbitrator's final award ordered Salvatore Cipriano to pay $485,155 (Mary Cipriano's interest in PCE) in installments, without interest on the award, and terminated his alimony obligation effective May 2007. The arbitrator granted credit for Salvatore Cipriano's alimony payments from May 2007 through September 2008, and determined that Cipriano would continue to pay $5,500 a month until he paid an additional $391,655 to satisfy the $485,155 award.

Mary Cipriano moved to vacate, modify, or correct the arbitration award, arguing that the arbitrator failed to follow the law-of-the-case doctrine, impermissibly modified spousal support retroactively, and altered the award after ex parte communications from Salvatore Cipriano. In December 2008, the trial court entered an order confirming the arbitrator's award and denying Mary Cipriano's motions. That order is the subject of

_____

[1] *Cipriano v Cipriano*, unpublished opinion per curiam of the Court of Appeals, issued July 25, 2006 (Docket No. 259818), p 2 (*Cipriano III*).

the first appeal of these consolidated appeals. In June 2009, the trial court held a hearing on Salvatore Cipriano's motion to reduce the monthly payments. The trial court reduced his monthly payments to $3,870, but did not alter the total amount awarded. That order is the subject of the second appeal of these consolidated appeals.

## II. OVERVIEW

Domestic-relations arbitration is governed by the specific statutory scheme set forth in the domestic relations arbitration act (DRAA).[2] Under the DRAA, parties to a domestic-relations proceeding may stipulate to submit their disputed issues to binding arbitration, including issues of property division, alimony, child support, custody, and visitation.[3] The purpose of arbitration is to avoid protracted litigation. Because an arbitration agreement narrows a party's legal right to pursue a claim in a particular forum,[4] the judiciary will enforce an arbitration agreement to defeat an otherwise valid claim.[5]

The DRAA delineates the circumstances in which a court must vacate an arbitration award. MCL 600.5081(2) provides:

> If a party applies under this section, the court shall vacate an award under any of the following circumstances:
>
> (a) The award was procured by corruption, fraud, or other undue means.

---

[2] MCL 600.5070 *et seq.*

[3] MCL 600.5071; *Harvey v Harvey*, 257 Mich App 278, 284; 668 NW2d 187 (2003).

[4] *Hendrickson v Moghissi*, 158 Mich App 290, 298; 404 NW2d 728 (1987).

[5] *NuVision v Dunscombe*, 163 Mich App 674, 684; 415 NW2d 234 (1987).

(b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.

(c) The arbitrator exceeded his or her powers.

(d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

In order for a court to vacate an arbitration award because of an error of law, the error must have been so substantial that, but for the error, the award would have been substantially different.[6]

### III. EX PARTE COMMUNICATION

#### A. STANDARD OF REVIEW

Mary Cipriano argues that the trial court should have vacated the arbitrator's award because the arbitrator received communications from Salvatore Cipriano after the arbitration hearing and before the arbitrator's award. This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award.[7]

#### B. ANALYSIS

Mary Cipriano does not support her argument that the trial court should have vacated the arbitrator's award because of Salvatore Cipriano's ex parte contacts with the arbitrator by specifying under which subdivision of MCL 600.5081(2) the award should have been vacated. On July 28, 2008, the arbitrator sent the parties an excerpt of his

---

[6] *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009).

[7] *Bayati v Bayati*, 264 Mich App 595, 597-598; 691 NW2d 812 (2004).

findings and awards in an attempt to encourage them to reach a settlement. The excerpt of the arbitrator's awards indicated that Salvatore Cipriano would pay a cash lump sum of $485,155 and that his spousal support obligation would be reduced from $5,500 a month to $250 a month effective October 3, 2008. On August 6, 2008, the arbitrator sent a letter to Salvatore Cipriano's attorney, and copies to the trial judge and Mary Cipriano's counsel, indicating that he had received a recent financial report from Salvatore Cipriano with the words "Don't kill the goose" handwritten on the cover. According to the letter, Salvatore Cipriano had also placed a three- to five-minute phone call to the arbitrator, essentially stating that he could not borrow one-half million dollars as the excerpt of the arbitrator's award provided. The arbitrator stated that he listened, without response, to Salvatore Cipriano and characterized his actions as disconcerting and inappropriate. On September 23, 2008, the arbitrator issued his final award of $485,155 to Mary Cipriano, but made it payable in monthly payments of $5,500 that began in May 2007, which is the date that the arbitrator determined that spousal support payments should stop.

Citing *Hewitt v Village of Reed City*,[8] Mary Cipriano argues that the law is "very clear" that "[a]n arbitrator's ex parte communications renders an arbitration award void regardless of whether it affected the arbitrator's partiality." In *Hewitt*, the Michigan Supreme Court did note:

> The rule is very strict in excluding any communication to an arbitrator, made *ex parte* after the case is submitted; and when such communication, which may affect the result, is made, it is not usual to enter into an inquiry as to whether the arbitrator was in fact influenced by it or not.[9]

---

[8] *Hewitt v Village of Reed City*, 124 Mich 6; 82 NW 616 (1900).

[9] *Id.* at 8.

The Court went on to state, "[I]n laying down a rule easy to follow, and which will afford protection in all cases, . . . we think the safer rule is for the court to enter into no examination as to whether the arbitrator is in any way influenced by *ex parte* communications."[10] However, in that case, the Court was considering an ex parte communication that was contrary to the parties' express stipulation to exclude all legal arguments or briefs.[11] The Court concluded, "with some reluctance," that the ex parte communication was a violation of the spirit of the terms of the parties' agreement.[12] Here, the parties made no provision in their arbitration agreement regarding ex parte communications, and the ex parte contacts did not involve legal argument.

Mary Cipriano suggests that there is a rule that ex parte contact with the arbitrator must result in the award's being vacated. However, the cases she cites in support of such a rule were based on ex parte contact that violated agreements by the parties regarding the procedures for their arbitration. Further, as *Detroit v Detroit Lieutenants' & Sergeants' Ass'n*[13] alludes, it would be difficult to reconcile imposing a bright-line rule that requires the vacation of an arbitrator's award in these circumstances when, conversely, the standard of review provides that an arbitration award may not be vacated unless an error was so substantial that the award would have been substantially different without the error.[14]

---

[10] *Id.* at 8-9.

[11] *Id.* at 8.

[12] *Id.*

[13] *Detroit v Detroit Lieutenants' & Sergeants' Ass'n*, unpublished opinion per curiam of the Court of Appeals, issued February 17, 2005 (Docket No. 250424), pp 2-3 (Murray, P.J., concurring).

[14] *Washington*, 283 Mich App at 672.

To resolve Mary Cipriano's argument regarding the results of ex parte contact, the definitive question is not whether there is a bright-line rule but, rather, whether the ex parte contact violated the parties' arbitration agreement. The DRAA requires that parties first sign an agreement for binding arbitration delineating the powers and duties of the arbitrator.[15] Rather than employ the formality required in courts, parties in arbitration are able to shape the parameters and procedures of the proceeding.[16] The DRAA contemplates that the parties will determine how they will produce the information necessary to resolve their dispute.[17] The DRAA does not impose procedural formalities that restrict this freedom.[18]

In *Miller v Miller*, the Supreme Court ruled that it was permissible for an arbitrator to gather information by shuttling between the parties located in separate rooms, questioning and listening to them, and reviewing voluminous material the defendant submitted three days after the hearing, *before* the arbitrator modified the award and issued the final binding award.[19] Because the DRAA allowed the parties to determine the procedures to be used in their arbitration and the parties had specifically agreed to allow the arbitrator to conduct the hearing in two separate rooms, the Supreme Court reversed the judgment of the Court of Appeals and reinstated the arbitration award.[20]

This case is similar to *Miller* because information was obtained through contact with only one party and

---

[15] MCL 600.5072(1)(e).

[16] *Miller v Miller*, 474 Mich 27, 32; 707 NW2d 341 (2005).

[17] *Id.*

[18] *Id.*

[19] *Id.* at 29, 35.

[20] *Id.* at 33, 35.

the arbitrator modified the award after receiving additional information from that party. However, the parties' arbitration agreement here made no mention of ex parte communication with the arbitrator. The only mention of the arbitration procedure was, "The format for the arbitration shall be determined by the arbitrator[s], with the objective of expediting the hearing." Mary Cipriano has not shown that the arbitrator exceeded his powers, according to the arbitration agreement, by receiving Salvatore Cipriano's ex parte contacts.[21] According to the parties' agreement, the arbitrator retained the discretion to receive information from Salvatore Cipriano in order to expedite the proceedings.

Further, Mary Cipriano has not shown that any misconduct of the arbitrator prejudiced her rights or that the arbitration award was procured by undue means.[22] A failure to disclose facts that might reasonably lead to an appearance of bias constitutes grounds for vacating an arbitration award.[23] While Salvatore Cipriano's conduct was improper, the arbitrator responded promptly and decisively to disclose the contacts and prevent further contact. The arbitrator adjusted his planned award after Salvatore Cipriano's contacts, but explained that he was in the process of "reconsideration of the overall equity and realistic effectuation of the excerpt terms" a few days *before* receiving Salvatore Cipriano's communications.

Additionally, the arbitrator was already in possession

---

[21] MCL 600.5081(2)(c); see *Miller*, 474 Mich at 30 (stating that an arbitrator exceeds his or her powers if the arbitrator acts beyond the material terms of the contract from which the arbitrator derives his or her authority).

[22] MCL 600.5081(2)(a),(b), and (d); *Miller*, 474 Mich at 30-31.

[23] *Albion Pub Sch v Albion Ed Ass'n/MEA/NEA*, 130 Mich App 698, 701; 344 NW2d 55 (1983).

of annual financial reports from 2005, 2006, and 2007 when Salvatore Cipriano supplied him with the 2008 report. The arbitrator's adjustment of his award from a lump sum to installment payments and reduction of monthly spousal support from $5,500 to zero rather than $250 to begin in May 2007 rather than October 2008 did not result in a substantial difference in the arbitration award by reason of a substantial error of law.[24] Both the preliminary award detailed in the excerpt and the final award greatly reduced the amount of spousal support, and the final award did not change the total amount of the property award. Therefore, the trial court did not err by confirming the arbitrator's award despite Salvatore Cipriano's ex parte contacts.

IV. SPOUSAL-SUPPORT MODIFICATION

A. STANDARD OF REVIEW

Mary Cipriano argues that the trial court should have vacated the arbitrator's award because it was an error of law to modify retroactively the spousal-support payments beginning in May 2007 and to convert spousal-support payments that had been made from May 2007 to October 2008 into installment payments for the property award. This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award.[25]

B. ANALYSIS

An arbitrator exceeds his or her powers if the arbitrator acts in contravention of controlling law.[26] Here,

---

[24] *Washington*, 283 Mich App at 672.

[25] *Bayati*, 264 Mich App at 597-598.

[26] *Miller*, 474 Mich at 30.

the arbitrator's award determined that monthly $5,500 payments to Mary Cipriano throughout the pendency of the arbitration process, from May 2007 to October 2008, were installment payments for the ultimate property award and that Salvatore Cipriano's spousal-support obligation was eliminated. Mary Cipriano contends that this award was an impermissible retroactive modification of spousal support according to MCL 552.603(2). MCL 552.603(2) provides:

> Except as otherwise provided in this section, a support order that is part of a judgment or is an order in a domestic relations matter is a judgment on and after the date the support amount is due as prescribed in [MCL 552.605c], with the full force, effect, and attributes of a judgment of this state, and is not, on and after the date it is due, subject to retroactive modification. No additional action is necessary to reduce support to a final judgment. Retroactive modification of a support payment due under a support order is permissible with respect to a period during which there is pending a petition for modification, but only from the date that notice of the petition was given to the payer or recipient of support.

Mary Cipriano argues that the clear language of MCL 552.603(2) prohibits retroactive modification of spousal support. However, the clear language of MCL 552.603(2) also allows for the retroactive modification of support orders from the date of notice of a petition for modification of support. The retroactivity of a modification is a matter within the court's discretion; however, the modification may not take effect before the time the petition to modify was filed.[27] Salvatore Cipriano moved to modify the spousal support or the property award or to allow him to make installment payments in May 2007. Therefore, the

---

[27] *Varga v Varga*, 173 Mich App 411, 417; 434 NW2d 152 (1988).

arbitrator's award eliminating spousal support retroactively to May 2007 and converting the $5,500 payments to installment payments to satisfy the property award did not violate MCL 552.603(2).

### V. LAW-OF-THE-CASE DOCTRINE

#### A. STANDARD OF REVIEW

Mary Cipriano contends that the arbitrator exceeded his powers by issuing an award in contravention of controlling law because the award violated the law-of-the-case doctrine. This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award.[28]

#### B. ANALYSIS

The law-of-the-case doctrine holds that an appellate court's ruling on a particular issue binds the appellate court and all lower tribunals with respect to that issue.[29] Mary Cipriano does not specify which award of the arbitrator violated the appellate decisions in the case, although it appears she is contesting modification of the spousal-support award in light of the doctrine. This Court previously upheld the trial court's award of $66,000 a year in alimony.[30] Additionally, the arbitrator's award did not provide for interest on the $485,155 property award, which was contrary to this Court's holding in *Cipriano III*.

However, the law-of-the-case doctrine does not apply to arbitration proceedings. The law-of-the-case doctrine binds the appellate court and all lower tribunals with

---

[28] *Bayati*, 264 Mich App at 597-598.

[29] *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

[30] The arbitration award extinguished this obligation.

respect to issues that the appellate court decides.[31] A "tribunal" is "[a] court or other adjudicatory body."[32] Arbitration is an alternative to resolving a dispute with adjudication or litigation.[33] The purpose of arbitration is to avoid protracted litigation, and an agreement to arbitrate will be judicially enforced to defeat an otherwise valid claim.[34] The fact that the relief granted in an arbitration award could not have been granted by a trial court is not grounds for vacating the award.[35] The reason for the law-of-the-case rule is the need for finality of judgment in litigation, and, in this case, the parties agreed that arbitration was to provide a finality of judgment.[36]

Further, this Court has consistently held that arbitration is a matter of contract and that the arbitration agreement is the agreement that dictates the authority of the arbitrators.[37] The DRAA requires that the parties sign an agreement for binding arbitration delineating the powers of the arbitrator. The act also contemplates that the parties will discuss the scope of the issues with the arbitrator.[38] Here, the parties agreed that the arbitrator would decide the "effect of the appellate court decisions on the equities of this matter regarding spousal support ordered and previously paid during the pendency of the appeals process."

---

[31] *Ashker*, 245 Mich App at 13.

[32] Black's Law Dictionary (8th ed).

[33] MCL 600.5001(1).

[34] *NuVision*, 163 Mich App at 684.

[35] MCL 600.5081(3).

[36] *Reeves v Cincinnati, Inc (After Remand)*, 208 Mich App 556, 560; 528 NW2d 787 (1995).

[37] *Miller*, 474 Mich at 32, quoting *Rowry v Univ of Mich*, 441 Mich 1, 10; 490 NW2d 305 (1992).

[38] MCL 600.5072(1)(e); *Miller*, 474 Mich at 32.

The arbitrator's award terminating spousal support at the time of Mary Cipriano's receipt of an additional property award was within the parameters of the parties' agreement. Mary Cipriano agreed that the arbitrator could consider the fairness of spousal support paid in light of this Court's determination that she was entitled to an additional property award. The arbitrator's award directly addressed this scope of authority. Therefore, we uphold the arbitration award because Mary Cipriano has not demonstrated that the arbitrator exceeded the powers that the parties' agreement granted to him. There was no error of law evident on the face of the award that was so substantial that, but for the error, the award would have been substantially different.[39]

## VI. MODIFICATION OF INSTALLMENT PAYMENTS

### A. STANDARD OF REVIEW

Mary Cipriano argues that the trial court impermissibly modified the arbitration award by reducing the monthly amount that the arbitrator awarded. This Court reviews de novo a circuit court's decision to enforce, vacate, or modify an arbitration award.[40]

### B. ANALYSIS

More than nine months after the arbitration award, the trial court, on Salvatore Cipriano's motion, reduced the monthly $5,500 payments to Mary Cipriano to $3,870 a month. Salvatore Cipriano argued that the trial court had the equitable power to modify the installment payments pursuant to MCL 600.6221 and

---

[39] *Washington*, 283 Mich App at 672.

[40] *Bayati*, 264 Mich App at 597-598.

that economic circumstances necessitated the modification.[41] However, MCR 3.602 governs the procedure for modifying arbitration awards. Because there was no pending action between these parties, MCR 3.602(K)(1) required that a complaint to modify the arbitration award be filed within 21 days after the date of the arbitration award. Salvatore Cipriano moved to reduce the monthly payments awarded by arbitration *several months* after the arbitration award.

Additionally, MCR 3.602(K)(2) provides the grounds for modification of an arbitration award:

> On motion made within 91 days after the date of the award, the court shall modify or correct the award if:
>
> (a) there is an evident miscalculation of figures or an evident mistake in the description of a person, a thing, or property referred to in the award;
>
> (b) the arbitrator has awarded on a matter not submitted to the arbitrator, and the award may be corrected without affecting the merits of the decision on the issues submitted; or
>
> (c) the award is imperfect in a matter of form, not affecting the merits of the controversy.

Salvatore Cipriano asked the trial court to invoke its equitable powers in order to modify the monthly payments. Yet the court gave no grounds as a reason for modifying the award. Significantly, neither Salvatore Cipriano nor the trial court referred to any of the provisions of MCR 3.602(K)(2) to justify modification of the award. Even though the trial court did not change the total amount of the property award, the matter had been submitted to binding arbitration, and the arbitra-

---

[41] MCL 600.6221 provides, "The judge may, on motion of either party, following due notice to the other, alter the amounts and times of payment of the installments from time to time when he may deem it advisable and fair."

tor specifically awarded $5,500 in monthly payments to Mary Cipriano. The trial court erred by modifying the award of the arbitrator without a timely complaint and without reference to MCR 3.602(K)(2). We reverse this order of the trial court and remand the case to the trial court to reinstate the $5,500 monthly payments that were awarded in arbitration.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.